

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
### AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable M. E. Gates
County Attorney
Walker County
Huntsville, Texas

Dear Sir:　　　　　　　Opinion No. 0-6665
　　　　　　　　　　　　Re: Whether claim against Falba
　　　　　　　　　　　　　　School District of Walker
　　　　　　　　　　　　　　County is legal under facts
　　　　　　　　　　　　　　stated.

　　　　　Your request for opinion has been received
and carefully considered by this department. We quote
from your request as follows:

　　　　　"A dispute has arisen between a man
by the name of Irl McCaffety, who resided prior
to November, 1944, in the Falba Common School
District of Walker County, and the County
Superintendent and County School Board of Wal-
ker County, Texas. I have advised the County
Superintendent and School Board that McCaffety
has no legal claim against the Falba School
District and the facts are herein stated.

　　　　　"A small district in the county
enumerated only five white children and seven-
teen colored children. They have a fifty cent
tax with a low valuation, the negroes paying
about as much of the taxes as the whites. With
these figures, you can understand that it was
impossible to employ a white teacher and it
took most of the funds to employ a colored
teacher and maintain a school for the negroes.
The trustees of the district tried to get some
one to transport the white children to the
nearest school but were unable to get anyone.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. M. E. Gates - Page 2

They even offered the man who had three children (they were the only ones to attend school) the money they had to pay on transportation if he would fix up his own car and transport the children. He refused the offer. Later, the Assistant County Superintendent suggested to this man that he board the children in town with relatives and perhaps the transportation could be applied on the board, but, that before this could be done he should arrange the matter agreeably with the County Superintendent and the local board members before he should make any move. He stated that he had no relatives but could get a small apartment for his wife and the three school children to stay in during the school week and he would stay in the district. The assistant states that she told the man that this arrangement would have to be agreeable with the County Superintendent and the local board members before he should make any move. Instead of waiting to see whether or not the arrangement would be satisfactory and legal, the man moved his entire family and possessions into a house in town. In the meantime, the assistant had discussed this matter with the County Superintendent and the local board members. The County Superintendent advised against the arrangement, and one local board member was for it, the other opposed; however, when the man moved his whole family and household possessions into town, both board members were opposed to paying out any money on the grounds that it was not legal and the district was no longer responsible. The assistant Superintendent then discussed the matter with the deputy state superintendent and the county attorney. They both agreed that it would be illegal so the matter was dropped. No more was heard from the man until school was out. Now, he has employed a lawyer and come before the County School Board, pressing his case on the grounds that the assistant and one of the trustees had promised him aid.

"Please bear in mind that the assistant made no promise because she had not taken the matter up with the superintendent nor the local board and she definitely told the man that it would have to be agreeable with them before he should do anything.

"Both of the children entered school at Huntsville public school November 14, 1944. The oldest one in the 8th grade and the youngest one in

Hon. M. K. Gates - Page 3

the 3rd grade. The rural common school district from which they moved is on the north boundary line of Walker County and there is another common school district between its south boundary and the Huntsville Independent School, in other words, there is an intervening district, and the children were not required to pay tuition in the Huntsville Independent School District.

"The County School Board has deferred action on the case until I can get an answer from you."

We also quote from your brief as follows:

"A Summary of the Facts -

"It will be noted that Irl McCaffety resided in the Palba Common School District, and there were less than twenty white scholastics and that on the 19th day of July, 1944, he had his children transferred to the Pine Prairie Common School District, as is shown by exhibit to the letter. That he had been advised by the acting County Superintendent, and a member of his local board that no school would be taught for whites in his district. He states that one of the trustees (Mr. Langley) was to transport the children to and from the Pine Prairie school. He states that the acting Superintendent and Mr. Langley agreed during October that if he would move temporarily for school purposes to Huntsville, that they would allow him $10.00 per month for each child as transportation costs, and that he did move to Huntsville.

"Mrs. Leonard, the assistant Superintendent, denies that she made the agreement and that she told Mr. McCaffety that this arrangement would have to be agreeable with the County Superintendent and the local board member, and instead of waiting to see if the agreement would be satisfactory he moved his family and possessions to Huntsville. She further states that she had discussed this matter with the County Superintendent and the local board members, and that the County Superintendent advised against the arrangement and one local board member was for it and the other opposed to it; however when the man

moved his whole family and household possessions into Huntsville both board members were opposed to paying out any money and the assistant Superintendent then discussed the matter with the deputy State Superintendent and the County Attorney. They both agreed that it would be illegal so the matter was dropped. The assistant says she made no promises because she had not taken the matter up with the Superintendent nor the local board and she definitely told the man that it would have to be agreeable with them before he should do anything.

"Two of his children, one in the eighth grade and the other in the third grade attended the Huntsville school without payment of tuition. They did not attend the Pine Prairie School.

"The transfer or a copy of it was sent to the State Superintendent and their prorata part of the money per capita for scholastics was transferred from the Falba Common School District to the Pine Prairie Common School District.

## "PROPOSITION

"Article 2695, Vernon's Annotated Statutes, provides in substance;  that each year after the scholastic census of the County is completed, the County Superintendent shall, if any district has fewer than twenty pupils of scholastic age, white or colored, have authority to consolidate said district as to said white or colored school with adjoining school, etc.  This provision of the statute was not followed, however, the complaining party transferred his children to Pine Prairie, and their proportionate part of the Scholastic Funds was also transferred to the funds of the Pine Prairie Common School District.

## "AUTHORITIES

"Articles 2695 Vernon Annotated Statutes
37 Tex. Jur. 943, sec. 75
McCorkel, County Superintendent vs.
    District Trustees of Robinson
    Spring School District 121 S.W. (2)
    page 1048
Syllabus 14-50

Hon. M. E. Oates - Page 5

## "ARGUMENT

"If the complaintant's Affidavit was wholly true, (which is not admitted, but denied by the trustees and authorities), the school board would have no authority to order the Falba Common School District to pay the complainant the money demanded for the following reasons:

"(a) The contract or agreement he states was made is not authorized by statutes.

"(b) One trustee alone cannot make a binding agreement with a school patron.

"(c) His children having been transferred to Pine Prairie School District the Falba Trustees could make no contract or agreement concerning their school attendance.

"(d) If the complainant has a grievance it would be against the Pine Prairie Common School District and not the Falba District.

"(e) Neither the County Superintendent nor the trustees of Falba Common School District are authorized by law to make an agreement with a patron to contribute a sum of money to pay the pupils board in lieu of transportation, because, the law does not so provide. The transfer of the children was made at the request of the complainant, and, according to his own affidavit only one trustee of the school district agreed to anything, and according to the testimony of the assistant superintendent and of the two trustees in the Falba District, they told him, after having talked to the County Attorney, that they would not agree to it, that is, to the payment as he now claims and demands, because, they were advised that such an agreement would be illegal."

Under the facts stated we do not perceive any theory upon which claimant McCaffety can recover against

Hon. M. E. Gates - Page 6

Palba School District and it is therefore our opinion that he has no legal claim against Palba School District.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By       Wm. J. Panning
                 Assistant

WJP:bt

APPROVED JUN 21 1945

